UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

SEUNG MIN PARK, A/K/A
JOSEPH PARK,

                Debtor.
------------------------------------------------------------X
SAYFUR RAHMAN and WORLD AUTO
SALES, LLC,

                Plaintiffs,
-against-

SEUNG MIN PARK, A/K/A
JOSEPH PARK, DBA Auto SOLUTION
and EUN HA PARK,

                Defendants.
------------------------------------------------------------X

Case No. 09-78622-dte

Chapter 7

Adv. Pro. 10-8040-dte

## MEMORANDUM DECISION AND ORDER

*Appearances By:*

Law Offices of Dean T. Cho
*Attorneys for Plaintiffs*
By: Dean T. Cho, Esq.
440 Park Avenue South
3rd Floor
New York, NY 10016

The Weinstein Group, P.C.
*Former Attorneys for Defendants*
By: Lloyd J. Weinstein, Esq.
10 Newton Place
Hauppauge, NY 11788

Seung Min Park
*Debtor Pro-Se*
39 Richard Court
Plainview, NY 11803

Before this Court is the Plaintiffs' motion (the "Motion") in which they seek: (a) the denial of Seung Min Park's (the "Debtor") discharge of his debt to the Plaintiffs under 11 U.S.C. § 523(a)(4); (b) the striking of the Answer filed by the Debtor and his wife, Eun Ha Park (collectively, the "Defendants"); (c) an award for damages; and (d) an order holding the Defendants in civil contempt pending their full compliance with discovery. The Defendants did not file any opposition to the Motion, and after a hearing held on January 11, 2011, wherein neither side appeared, this Court took the matter under submission. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is proper pursuant to 28 U.S.C. §1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(I), and (J).

## BACKGROUND:

Plaintiff World Auto Sales, LLC ("WASLLC") was formed on January 27, 2004 by the Debtor and Universal Capital Corporation. WASLLC owned and operated a car dealership, which sold Subaru brand cars and used cars of all brands. Universal Capital Corporation was the majority shareholder of WASLLC, and the Debtor owned a minority stake. The Debtor was also the General Sales Manager of the business.

In 2006, the Debtor approached Plaintiff Sayfur Rahman ("Rahman") about investing in WASLLC. The Debtor informed Rahman that he, the Debtor, wanted to buy out Universal Capital Corporation's interest in the business and run the enterprise. Rahman agreed, and in December 2006 Rahman invested $125,000.00 in WASLLC. Universal Capital Corporation's interest was bought out by the Debtor, utilizing Rahman's contribution and other funds.[1] Rahman's investment entitled him to a 16.66% interest in the business, a guaranteed $10,000 in

---

[1] There was another individual that made a $125,000.00 investment in the business, a Mr. Adil M. Khan. It is unclear from the papers what Mr. Khan's current status or role is in the business.

2

monthly profit distributions as well as an additional one-third share of any WASLLC profit distributions that Debtor would be entitled to. The Debtor, who at this point was the majority shareholder, would continue to operate the business.

While the Debtor was to operate the business, Rahman was also involved in WASLLC's operations. According to Rahman's counsel, Rahman revamped WASLLC's advertising and its financing department, and had a role in hiring new employees. Over time WASLLC's sales and profitability improved greatly. The Plaintiff initially received the guaranteed $10,000 monthly payments for a number of months, but he alleges that the Debtor withheld the profit distributions that were due to Rahman under their agreement. Sometime around July 2007 the Debtor made an offer to buyout Rahman's interest in the company for $125,000.00, an amount equal to Rahman's initial investment in WASLLC, plus a payment of $100,000.00 representing Rahman's share of WASLLC's profit distributions for January 2007 through July 2007. Rahman rejected the Debtor's offer.

Rahman alleges that the Debtor began a pattern of behavior designed to harm Rahman and to minimize any profit that WASLLC could have made. Rahman alleges, and the Debtor does not dispute, that the Debtor: (a) ceased making the monthly $10,000 payments to Rahman; (b) did not pay Rahman one-third of the profit distribution of WASLLC; (c) did not pay Rahman his 16 2/3% pro rata share of WASLLC's income; (d) did not transfer a member's certificate representing Rahman's member interest in WASLLC upon Rahman's request; and (e) did not notify Subaru of Rahman's equity interest in WASLLC or get Subaru's approval of same. In addition, the Plaintiffs allege that the Debtor formed another business, Auto Solution d/b/a Jaeil Capital Corp. ("Auto Solution"), which sold both new and used cars. According to Plaintiffs, the Debtor diverted WASLLC's money and profits to Auto Solution.

As a result of the Debtor's actions, in October 2007 Rahman, both personally and on behalf of WASLLC, commenced an action seeking damages against the Debtor in the Supreme Court of the State of New York, County of Queens (the "State Court"). The Defendant/Debtor never filed an answer to the State Court complaint. The State Court issued a temporary restraining order ("TRO") against the Debtor, which enjoined the transfer or sale of any equity interest in WASLLC and enjoined the Debtor from making any distribution or transfer of funds or assets of WASLLC without Rahman's consent. According to the Plaintiffs, in spite of the TRO, the Debtor closed down WASLLC's operations and its bank accounts, and he transferred WASLLC's assets to himself and his wife. The Plaintiffs assert that the Debtor's testimony at his 341 Meeting proves this, wherein the Debtor testified that he had personal accounts with Citibank and Chase but that those accounts were changed in April 2009 to only reflect his wife's name as the owner of the accounts. The Plaintiff alleges that the Debtor also used WASLLC's assets to set up another auto dealership, Max's World of Autos. It is unclear from the Adversary Proceeding Complaint if Max's World of Autos is related to Auto Solution. Due to the Debtor's actions, as well as the Debtor's failure to file an answer to the State Court complaint, the Plaintiff filed a motion for contempt and a motion for default judgment in the State Court. The Debtor did not respond to either motion. However, before the State Court could issue a decision on those motions, the Debtor filed the instant bankruptcy case in this district on November 11, 2009.

A few months later, on February 2, 2010, the Plaintiffs filed the instant adversary proceeding against the Defendants. The Defendants filed an Answer on March 3, 2010 asserting general denials and several affirmative defenses. Pursuant to a motion filed on July 9, 2010, the Plaintiffs requested, among other things, that this Court compel the Defendants to comply with discovery and that this Court lift the automatic stay to allow the State Court matter to proceed.

The Defendants opposed, and this Court held a hearing on August 12, 2010. After consideration of the arguments, this Court granted the Plaintiffs' motion, lifted the automatic stay and instructed the Defendants to comply with the Plaintiffs' discovery requests. This Court issued an Order directing the Defendants to produce and deliver all responsive documents to the Plaintiffs' request by August 19, 2010. In addition, this Court directed that all discovery requests from the Defendants were to be completed within 90 days, and a trial date was scheduled (the "Discovery Order"). The Defendants did not comply with the Discovery Order.

Once the automatic stay was lifted, on September 2, 2010 Supreme Court Justice Rosengarten granted the Plaintiffs' State Court motion for a default judgment on the issue of the Debtor's liability, citing the Debtor's "blatant disregard for the court's proceedings and order." (Plaintiff's Exhibit A, ECF Docket No. 23). Justice Rosengarten then scheduled an inquest to determine the amount of the Debtor's liability, and to determine whether or not the Debtor should be held in contempt of the State Court's prior orders. The inquest was held on September 29, 2010.

At the inquest, the Plaintiffs asked for, and received, an adverse inference to be held against the Debtor. Upon consideration of the facts and the documentary evidence, Justice Rosengarten determined that the Debtor was liable to the Plaintiffs in the sum of $1,071,487.50. (ECF Docket No. 39). At the inquest hearing Justice Rosengarten stated that it appeared "that the shutdown of the company and the opening of another company was done with the sole intention of cutting the Plaintiff[s] out of the new company." *Id.* After Justice Rosengarten granted the Plaintiffs' a judgment against the Defendants, the Plaintiffs' filed the instant Motion with this Court.

The first hearing that this Court held on the Motion was on November 4, 2010. The Defendants' counsel appeared and stated that he was unable to reach his clients despite attempts at communicating with them. The Defendants did not appear at the hearing. This Court admonished Defendants' counsel and informed him that the Defendants had a duty to comply with the Discovery Order and Plaintiffs' discovery requests. In addition, Defendants' counsel asked to withdraw as the Defendants' counsel due to his inability to communicate with the Defendants and the Defendants' failure to turn over the required discovery documentation. This Court adjourned the Motion for two weeks to give the Defendants an opportunity to appear, and to consider whether to permit Defendants' counsel to withdraw from the case.

The Debtor/Defendant appeared at the hearing held on November 18, 2010 along with counsel for both parties. The Debtor's Wife, who is a co-defendant in the instant adversary proceeding, did not appear. When questioned about his failure to turn over documents, the Debtor stated that he had given all of his financial documentation to his bankruptcy counsel. This Court stated that this was not an excuse and that if this statement was true, the Debtor had an obligation to get those documents and turn them over to the Plaintiffs when they were requested. Instead the Defendant ignored the discovery requests and this Court's Discovery Order.

After granting the Defendants' counsel's request to withdraw, this Court adjourned the Motion a third time to January 2011. Plaintiffs' counsel was instructed to file a copy of the State Court inquest transcript prior to the hearing, which he did on January 3, 2011. However, neither of the parties appeared at the January hearing, and the Motion was taken under submission. This Court notes that, as of the date of this Memorandum Decision, the Defendants have not filed any opposition papers to the Motion.

## **DISCUSSION:**

Before the merits of the Motion can be addressed, this Court must address what appears to be a typographical error in the Plaintiffs' papers. The Plaintiffs purport to move under 11 U.S.C. § 532(a)(4), "whose text expressly provides that debts 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny'" are nondischargeable. (Plaintiffs' Motion, pg. 7, ECF Docket No. 23). However, there is no such section in the Bankruptcy Code. The Plaintiffs appear to be referring to 11 U.S.C. § 523(a)(4) (not § 532), which does exist in the Bankruptcy Code and does contain the language stated in the Motion.[2]

### 1. Standards For Summary Judgment and Collateral Estoppel

Where there are no genuine triable issues of material fact, then summary judgment is appropriate as a matter of law. *See e.g., Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). The party opposing the motion for summary judgment must put forth some evidence upon which a jury can properly proceed to find a verdict for the party opposing the motion. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (stating that the opposing party must "set forth specific facts showing that there is a genuine issue for trial."). Any ambiguities or reasonable inferences must be resolved in favor of the nonmoving party. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11.

Even when there is no opposition to a motion for summary judgment, as in the instant case, the court must still reach a determination as to whether, as a matter of law, summary judgment should be granted. *See Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. N.Y. 2004) ("Although the failure to respond [to a motion for summary judgment]

---

[2] Section 523(a)(4) of the Code provides:
> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> …..
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4) (2010).

7

may allow the district court to accept the movant's factual assertions as true … the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law'") (internal citations omitted); *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 394 (E.D.N.Y. 2007); *Hudson United Bank v. Pena*, 2005 U.S. Dist. LEXIS 5198 (E.D. Pa. Mar. 30, 2005).

The Plaintiffs assert that summary judgment is appropriate on the grounds of *res judicata*, and that based on the State Court judgment, the Debtor's discharge should be denied.[3] However, a review of the Motion shows that Plaintiff is really seeking to apply collateral estoppel to the State Court judgment. "Unlike res judicata … collateral estoppel precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on a different cause of action." *G & T Terminal Packaging Co. v. Consolidated R. Corp.*, 719 F. Supp. 153, 159 (S.D.N.Y. 1989); *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008) (commenting that many legal professionals are unable to distinguish *res judicata* from collateral estoppel, determining that the basis for the plaintiff's requested relief was actually collateral estoppel and not *res judicata*, and proceeding to decide the motion based on collateral estoppel grounds).

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999); *see Giaimo*

---

[3] Due to the unique nature of a dischargeability proceeding, the United States Supreme Court has held that *res judicata* is inapplicable in a denial of discharge proceeding. *Brown v. Felsen*, 442 U.S. 127, 138 (1979); *see Eurocrafters, Ltd. v. Vicedomine*, 2005 U.S. Dist. LEXIS 10079, *8 n.3 (N.D.N.Y May 18, 2005) ("State court judgments are not given *res judicata* effect in bankruptcy proceedings contesting dischargeability of debts based on fraud, over which bankruptcy courts have exclusive jurisdiction."); *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 117-118 (Bankr. S.D.N.Y. 2008). This is because under 11 U.S.C. § 523 (c)(1) bankruptcy courts have "exclusive" jurisdiction over issues regarding section 523(a)(2), (a)(4), (a)(6) and (a)(15). *See Tarone v. Tarone (In re Tarone)*, 434 B.R. 41, 50 (Bankr. E.D.N.Y. 2010); *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 72 (Bankr. S.D.N.Y. 1999).

*v. Detrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003). Under New York law the applicability of collateral estoppel depends on (1) whether the same issue was decided in the prior action and is decisive in the present action, and (2) whether the party opposing it had a full and fair opportunity to litigate the issue in the prior action. *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir. N.Y. 2007). The moving party bears the burden of establishing that it should be applied. *See New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d Cir. N.Y. 1997). Specifically, the application of collateral estoppel to a default judgment is also governed by New York law, and applies "to issues 'necessarily decided' by the default judgment, i.e., matters essential to sustain the judgment." *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 505 (Bankr. S.D.N.Y. 1999) (internal quotations omitted).

**2. Debtor's Debt To Plaintiff Is Nondischargeable**

The Motion seeks to deny the Debtor's discharge of his debt to Plaintiffs under two prongs of section 523(a)(4): (1) that the Debtor committed "fraud or defalcation while acting in a fiduciary capacity; and/or (2) that the Debtor committed "embezzlement." (Plaintiffs' Memorandum of Law, pg. 3, ECF Docket No. 24). As to the first prong cited by the Plaintiffs, section 523(a)(4) requires a creditor to establish that the debtor was acting in a fiduciary capacity to the creditor at the time the debt arose, and that the debtor committed fraud or defalcation while acting in that capacity. *See Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999); *Nahman v. Jacks (In re Paul)*, 266 B.R. 728, 735 (B.A.P. 9th Cir. 2001); *Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 52 (Bankr. S.D.N.Y. 2001).

It is clear that the Debtor satisfies the requirement of being a fiduciary because he was the majority shareholder (Plaintiff Rahman was a minority shareholder) and he was also the operator

9

of the business (Plaintiff WASLLC was the business). *See Southern Pacific Co. v. Bogert*, 250 U.S. 483, 487-488 (U.S. 1919) (holding that the majority shareholder acts in a fiduciary capacity to the minority shareholder and the corporation itself); *In re Hayes*, 183 F.3d at 168 ("numerous cases have applied the defalcation exception to debts owed by corporate officers, notwithstanding the absence of any express trust."); *Artis v. West (In re West)*, 339 B.R. 557, 567 (Bankr. E.D.N.Y. 2006). The question is whether the State Court default judgment and/or the inquest transcript establish either the "fraud" or "defalcation" elements of section 523(a)(4).

For a court to make a finding of fraud the plaintiff must establish that the debtor acted with "actual wrongful intent." *In re Hyman*, 502 F.3d at 68; *In re Zois*, 269 B.R. 89, 101 (Bankr. S.D.N.Y. 1999) (requiring a showing of intentional deceit to establish "fraud"). Defalcation, which is a misappropriation or failure to account by a fiduciary, requires a showing of "conscious misbehavior or extreme recklessness." *In re Hyman*, 502 F.3d at 68; *Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010).

As noted above, the Plaintiffs also allege that "embezzlement" is another basis for this Court to deny the Debtor's discharge of Plaintiffs' debt under section 523(a)(4). "For purposes of section 523(a) proceedings, embezzlement means 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Santaro v. Sgroi*, 2010 U.S. Dist. LEXIS 100686 (N.D.N.Y Sept. 24, 2010). In order for a court to determine that the Debtor performed an act of embezzlement, the court must make a finding of "actual wrongful intent." *See In re Hyman*, 502 F.3d at 68; *In re Caulfield*, 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996).

A review of Justice Rosengarten's decision granting the Plaintiffs' motion for default judgment shows that the focus of the decision was on the Debtor's failure to file an answer or

opposition to the motion, as well as the Debtor's repeated noncompliance with discovery and his disregard for Justice Rosengarten's orders. The inquest hearing transcript shows that Justice Rosengarten made findings as to the Debtor's wrongdoing. Justice Rosengarten stated that "[i]t appears [that] the shutdown of the company and the opening of another company was done with the sole intention of cutting the Plaintiff out of the new company." (ECF Docket No. 39, Pg. 10). Justice Rosengarten also stated that "[u]nder the circumstances based upon the evidence presented to the Court, I will grant the Plaintiffs' judgment against the Defendants in the amount of $1,071,487.50 plus applicable interest pursuant to the CPLR cost and disbursements." (ECF Docket No. 39, Pg. 13).

It is clear from Justice Rosengarten's statements that he considered the evidence that was presented to him at the inquest hearing, and he made findings as to the Debtor's state of mind, which is required for a showing of "fraud", "defalcation" and "embezzlement" for purposes of a denial of a discharge under section 523(a)(4). The Justice in the State Court action specifically found that the Debtor intentionally took steps to shutdown WASLLC and transferred its assets to the new company in order to prevent Rahman from participating in the profits of WASLLC. At the minimum Justice Rosengarten's statements show that he found that the Debtor acted with "actual wrongful intent" (as required for a finding of either "fraud" or "embezzlement"). Even though the instant motion is for summary judgment and all inferences must be made in favor of the nonmoving party, the facts show that Justice Rosengarten made findings as to the Debtor's actions and that those actions resulted in the damages to the Plaintiffs. Justice Rosengarten's decision provides the Plaintiffs with the basis for collateral estoppel. Therefore, the Plaintiff's motion for summary judgment is granted, and the Debtor's debt to the Plaintiff in the sum of $1,071,487.50, as determined by the State Court, is nondischargeable.

### 3. Plaintiffs' Request To Strike Defendants' Answer Is Granted

Rule 37(b)(2) of the Federal Rules of Civil Procedure, as applicable to the Bankruptcy Court through Bankruptcy Rule 7037, provides, in relevant part, that:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> …
> (vi) rendering a default judgment against the disobedient party ….

Thus, if a party fails to comply with discovery orders, then a court has the authority to take the appropriate action against the disobedient party. *See Southern New England Telephone Co. v. Global NAPs Inc*., 624 F.3d 123, 149 (2d Cir. 2010) (*quoting Update Art, Inc. v. Modlin Publ'g, Ltd*., 843 F.2d 67, 71 (2d Cir. 1988) (enumerating various reasons to grant sanctions under Rule 37, such as "'… ensur[ing] that a party will not benefit from its own failure to comply,' 'obtain[ing] compliance with the particular order issued;' and 'serv[ing] a general deterrent effect on the case at hand and on other litigation, provided that party against whom they are imposed was in some sense at fault.'"); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

In cases where a party fails to produce documents as ordered by the court and obfuscated the plaintiff's attempts to seek discovery, the court can enter an order striking the defendant's answer. *See Nippon Fire & Marine Ins. Co., Ltd. v. MV Egasco Star*, 1996 U.S. Dist. LEXIS 1783, *4-7 (S.D.N.Y. Feb. 20, 1996) (finding that the failure of the defendants to comply with the court's order requiring discovery, or confirm that the defendants had made an adequate search for the documents, warranted the court striking their answer); *see also SEC v. Wencke*, 577 F.2d 619, 622 (9th Cir. Cal. 1978) (noting that the district court had authority to strike

defendant's answer because he had "willfully refused to obey the district court's discovery order"); *Norman v. Young*, 422 F.2d 470, 473 (10th Cir. Utah 1970) (noting the inherent power of courts to presume the bad faith of defendants where they have suppressed proof that was essential to the disposition of a case).

In the instant adversary proceeding, the Defendants have repeatedly failed to comply with Plaintiffs' discovery requests and this Court's Discovery Order. It appears that the Debtor is repeating the same pattern of conduct that led to the default judgment being entered against him in the State Court. This Court instructed the Defendants, via their counsel, to comply with discovery at the August 12, 2010 hearing, and an order was issued with those same instructions. However, the Defendants ignored this Court's direction, and their failure to comply was one of the driving forces that led their counsel to withdraw from his representation of them. While Defendants' former counsel stated that certain documents were turned over, as this Court noted at the November 2010 hearing, this was immaterial as the documents turned over were not responsive to the discovery requests made by the Plaintiffs. Specifically, the Defendants failed to produce any documents pertaining to their personal finances, assets, or any transfers of such assets.

Furthermore, this Court notes that despite the Debtor/Defendant's sole appearance at the November 2010 hearing, the Defendant's spouse has never appeared before this Court, no opposition papers were filed in response to the Motion and neither of the Defendants appeared at the adjourned hearing on this Motion that was held by this Court on January 11, 2011. In consideration of the circumstances and the Defendants' failure to comply with discovery or file

13

opposition to the Motion, this Court grants the Plaintiffs' request to strike the Defendants' Answer, and the Defendants' Answer will be stricken.[4]

### 4. Plaintiffs' Request For Damages Against The Defendant-Spouse

The Plaintiffs allege that damages should be awarded against Defendant Eun Ha Park, the Debtor's wife, based upon alleged fraudulent transfers that were made by the Debtor to his wife prior to the Debtor filing for bankruptcy. Although the Defendants' Answer to the Complaint is stricken, this Court has insufficient information to make a determination as to the amount of damages that should be awarded against Eun Ha Park. As such, this Court will schedule an inquest hearing for the Plaintiff to put forward evidence of the alleged transfers and what amount should be awarded against Defendant Eun Ha Park.

### CONCLUSION:

Based upon the foregoing:

1. Plaintiffs' Motion with respect to striking the Defendants' Answer is granted as to all Defendants.
2. Plaintiffs' Motion with respect to summary judgment as to the Debtor is granted, and the Debtor's debt to the Plaintiffs in the sum of $1,071,487.50 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

---

[4] Due to this Court's determination that the Defendants' Answer will be stricken, the Plaintiffs' request for civil contempt against the Defendants pending their full compliance with discovery is rendered moot.

3. This Court will hold an inquest hearing on May 3, 2011 at 2:00 p.m. to determine the amount of damages to be awarded against the Defendant-Spouse, Eun Ha Park.

So Ordered.

Dated: Central Islip, New York  
      April 8, 2011

/s/ Dorothy Eisenberg  
**Dorothy Eisenberg**  
**United States Bankruptcy Judge**